UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-50-KDB
5:20-cr-46-KDB-DSC-4

| | |
|---|---|
| AAON DOUGLAS GOODSON, ) <br> ) <br> Petitioner, ) <br> ) <br> vs. ) <br> ) **ORDER** <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 1].

**I.    BACKGROUND**

Petitioner was charged in the underlying criminal case with: conspiracy to possess with intent to distribute methamphetamine and actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One); possession with intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and aiding and abetting the same in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2 (Counts Ten and Eleven); possession with intent to distribute 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (Count Eighteen); and possession of a firearm in furtherance of a drug trafficking crime, *i.e.*, Counts Eleven and Eighteen, in violation of 18 U.S.C. § 924(c)(1)(A) (Counts Twelve and Nineteen). [5:20-cr-46-KDB ("CR") Doc. 3].

Petitioner pleaded guilty to Counts One, Eleven and Twelve pursuant to a written Plea

1

Agreement in exchange for the United States' agreement to dismiss the remaining counts. [CR Doc. 141 at ¶¶ 1, 2]. Petitioner admitted that he is, in fact, guilty as charged in Counts One, Eleven, and Twelve. [Id. at ¶ 1]. The Plea Agreement provides that Petitioner's breach of the agreement would "permit the United States to proceed on any dismissed, pending, superseding or additional charges.…" [Id. at ¶ 4]. The Plea Agreement explains that the statutory minimum and maximum sentences as follows:

> <u>Count One</u>: in violation of 21 U.S.C. §§§ 841(a)(1), 841(b)(1)(A), and 846; a minimum term of ten years, a maximum term of life imprisonment, a $10,000,000 fine or both, and at least five years of supervised release….
>
> <u>Count Eleven</u>: in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A); a minimum term of ten years, a maximum term of life imprisonment, a $10,000,000 fine or both, and at least five years of supervised release….
>
> <u>Count Twelve</u>: in violation of 18 U.S.C. § 924(c)(1)(A); a minimum of 5 years consecutive to any other term of imprisonment and a maximum term of life imprisonment; a $250,000 fine and a term of supervised release.

[Id. at ¶ 5].

The parties agreed to jointly recommend that: "[t]he converted drug weight, that involves the amount of methamphetamine (actual) and the amount of mixture and substance containing a detectable amount of methamphetamine, both Schedule II controlled substances, that was known to or reasonably foreseeable by the defendant (including relevant conduct), is at least 90,000 kilograms or more for a Base Offense Level of 38;" the United States will recommend a two-level reduction for acceptance of responsibility, if applicable; the plea is timely for purposes of acceptance of responsibility, if applicable; and the career offender (U.S.S.G. § 4B1.1) or the armed career criminal (U.S.S.G. § 4B1.4) provision of the U.S. Sentencing Guidelines may be used in determining the sentence, if applicable. [Id. at 8]. The parties remained free to argue their respective positions regarding any other specific offense characteristics, cross-references, special

2

instructions, reductions, enhancements, departures, and adjustments to the offense level, and to seek a departure or variance from the applicable guideline range. [Id.]. The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines in determining the sentence; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Petitioner would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Petitioner read and understood the Factual Basis filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts for purposes of sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Petitioner was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and not to be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Petitioner had discussed with defense counsel his post-conviction and appellate rights, whether there are potential issues relevant to an appeal or post-conviction action, and the possible impact of any such issue on the desirability of entering into the Plea Agreement. [Id. at ¶ 16]. Petitioner

3

expressly waived the right to contest his conviction and sentence in post-conviction motions and on appeal except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶ 17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 28].

> The Factual Basis that was filed along with the Plea Agreement provides in relevant part:
>
> From as early as 2018 through April 2019, … the defendant, Aaron Douglas GOODSON, did knowingly and intentionally conspire and agree with other persons, known and unknown, to distribute and to possess with intent to distribute a controlled substance, that is, fifty (50) grams or more of methamphetamine (actual) and five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine, both Schedule II controlled substances.
>
> On or about November 24, 2018, … Aaron Douglas GOODSON, aided and abetted others known and unknown, did knowingly and intentionally possess with intent to distribute a controlled substance, that is, fifty (50) grams or more of methamphetamine (actual), a Schedule II controlled substance or five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine a Schedule II controlled substance.
>
> On or about November 24, 2018, … Aaron Douglas GOODSON knowingly and intentionally possessed a firearm, that is, a Taurus PT92 AF handgun, while possessing 326.43 grams of "actual" methamphetamine with intent to distribute, multiple cell phones, and $2,411 in US Currency.

[CR Doc. 142 at 1-2] (paragraph numbers omitted).

On October 1, 2020, a Rule 11 hearing came before a United States Magistrate Judge. [CR Doc. 150] (Acceptance). Petitioner stated under oath that he received a copy of the Indictment, discussed it with counsel, and fully understood the charges and the maximum and minimum penalties that could apply to him. [Id. at 1]. He admitted that he is, in fact, guilty of Counts One, Eleven, and Twelve. [Id. at 3]. Petitioner agreed that he understood that pleading guilty may cause

4

him to be deprived of certain civil rights, and that he discussed with counsel: how the sentencing guidelines may apply to his case; that the Court would not be able to determine the sentence until a PSR has been prepared and Petitioner has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he has no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 2]. Petitioner acknowledged the rights he was waiving by pleading guilty, and stated his understanding that the case would proceed directly to sentencing. [Id. at 2-3].

Petitioner confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 3]. Petitioner stated that he read the Factual Basis, understood it, and agreed with it. [Id.]. Petitioner stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence other than the terms of the Plea Agreement. [Id.]. Petitioner had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id.].

The Presentence Investigation Report (PSR) sets forth the facts from the Factual Basis. [CR Doc. 211 at ¶¶ 7-9]. It also contains a Statement of Relevant Conduct that sets forth detailed facts regarding the conspiracy and the related offenses, including the counts that were being dismissed pursuant to the Plea Agreement. See, e.g., [Id. at ¶¶ 16-19, 32-46] (addressing facts pertaining to November 8, 2018 and February 6, 2019, which were charged in Counts Ten, Eighteen, and Nineteen of the Indictment). The PSR scored the base offense level for Counts One and Eleven as 38 because the Petitioner was responsible for 204,218.20 kilograms of converted drug weight for the § 841(a)(1) offense, pursuant to U.S.S.G. § 2D1.1(a)(5). [CR Doc. 211 at ¶ 60]. Two levels were added because Petitioner maintained a residence for the purpose of

5

manufacturing or distributing a controlled substance pursuant to § 2D1.1(b)(12). [Id. at ¶ 62]. This resulted in an adjusted offense level of 40. [Id. at ¶ 66]. Three levels were deducted for acceptance of responsibility, based on Petitioner's written statement to the probation officer stating: "I accept responsibility for the things stated in the factual basis of this case." [Id. at ¶¶ 57, 68-69]. This resulting in a total offense level of 37 for Counts One and Eleven. [Id. at ¶ 70]. Petitioner had one criminal history point a criminal history category of I. [Id. at ¶ 79]. The resulting advisory guideline range was 210 to 262 months of imprisonment for Counts One and Eleven, and the statutorily-required sentence of 60 months, consecutive, for Count Twelve. [Id. at ¶¶ 112-13]. With regards to the impact of the Plea Agreement, the PSR notes that, "[h]ad the defendant been convicted of Count 19 (Possession of a Firearm in Furtherance of Drug Trafficking) of the Bill of Indictment, the defendant would have been subjected to an additional term of 5 years of imprisonment, consecutive to any other count." [Id. at ¶ 114].

A sentencing hearing came before the Court on August 4, 2021. [CR Doc. 418]. At that time, no objections to the PSR were outstanding. [Id. at 3]. Petitioner stated that he had received a copy of the PSR, read it, understood it, and had all the time he would like to discuss it with counsel. [Id.]. Petitioner also acknowledged that he is "a guilty man" and expressed remorse. [Id. at 8-9]. Counsel moved for a downward variance to a total of 181 months' imprisonment pursuant to the 18 U.S.C. § 3553 factors. [Id. at 3-6]; see [CR Doc. 330]. Counsel emphasized that Petitioner has never contested the facts, that he was "up front with the government," and that the offenses were "driven by" his addiction. [CR Doc. 418 at 4-8]. The United States asked the Court to impose a sentence that reflects the seriousness of the offense and Petitioner's role in the conspiracy. [Id. at 9-11]. The Court found that a downward variance sentence for Counts One and Eleven was warranted due to the nature and circumstances of the offense, the history and characteristics of

6

Petitioner, and to avoid unwarranted sentencing disparities among the defendants. [Id. at 15]. It accordingly sentenced Petitioner to 150 months for Counts One and Eleven and the statutorily required 60-month consecutive sentence for Count Twelve, for a total of 210 months' imprisonment in a Judgment that was entered on August 5, 2021. [CR Doc. 355] (Judgment). Petitioner did not appeal.

Petitioner filed the instant *pro se* § 2255 Motion to Vacate on April 20, 2022.[1] [Doc. 1]. He argues that counsel misadvised him about the consequences of his guilty plea. [Docs. 1, 1-1]. He seeks an evidentiary hearing. [Id. at 8]. The United States filed a Response arguing that the Motion to Vacate should be denied because Petitioner has failed to establish ineffective assistance of counsel. [Doc. 3]. Petitioner has not filed a Reply and the time to do so has expired. See [Doc. 2]. Accordingly, this matter is ripe.

## II. SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

7

presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[2]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a reviewing court need not even consider the performance prong. Strickland, 466 U.S. at 670.

The right to the assistance of counsel during criminal proceedings extends to the plea-bargaining process. See Missouri v. Frye, 566 U.S. 134 (2012). Thus, criminal defendants are

---

[2] Petitioner's claims have been liberally construed and restated. Any argument or subclaim which is not specifically addressed in this Order, has been considered and rejected.

8

Case 5:22-cv-00050-KDB   Document 4   Filed 08/04/22   Page 8 of 12

"entitled to the effective assistance of competent counsel" during that process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (internal quotation marks omitted); Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013). Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). Put differently, a defendant "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356 (2010); see United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

Here, Petitioner contends that "counsel proved [sic] ineffective assistance of counsel on the grounds that counsel advised Mr. Goodson upon inquiry that accepting the plea which included pleading guilty to 18 U.S.C. Section 924(c) … automatically precluding him from the First Step Act time credit eligibility under … 18 U.S.C. Section 3632(d)(4)(D)(xxii)." [Doc. 1 at 4]; see [Doc. 1-1 at 4-5]. He claims that his ineligibility for FSA time credits is "anything but de minimus [sic]…," and that he "would have not entered the plea had he known he would not be eligible to receive 15 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." [Doc. 1-1 at 5]. He further claims that counsel should have negotiated a more favorable plea agreement, and should have told him that he would be ineligible for discretionary release under the CARES Act. [Id.].

Petitioner's suggestion that counsel should have negotiated a more favorable plea is too

9

vague and conclusory to demonstrate ineffective assistance of counsel. See generally United States v. Dyess, 730 F.3d 354 (4th Cir. 2013) (vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the district court). Further, Petitioner's contention that different advocacy by counsel would have resulted in a more plea offer is purely speculative. He has not come forward with any evidence that a more favorable plea offer was forthcoming from the Government, or would have been accepted by the Court. See Frye, 566 U.S. at 147.

Assuming *arguendo* that counsel misadvised Petitioner about the § 924(c) conviction's effect on his FSA and CARES Act eligibility, he has failed to demonstrate prejudice.[3] He conclusively contends that he would not have pleaded guilty had counsel provided him with correct advice. However, he has failed to convince the Court that it would have been rational for him to reject the plea offer and proceed to trial. There was extremely strong evidence of Petitioner's guilt as set forth in the Factual Basis and Statement of Relevant Conduct. [CR Docs. 142, 211]. Further, pleading guilty was highly beneficial to Petitioner in that: the Government dismissed three serious charges, one of which was a second § 924(c) offense that would have resulted in an additional mandatory consecutive 60-month sentence; Petitioner received a three-level reduction in the offense level for acceptance of responsibility; and counsel relied heavily on Petitioner's acceptance of responsibility in advocating for a downward variance sentence, which was successful. It would not have been rational for Petitioner to reject the plea offer and proceed to trial under these circumstances. See, e.g., Meyer, 506 F.3d 358, 369 (4th Cir. 2007) (petitioner was unable to show that he would have insisted on going to trial if he had known that his underlying felonies would

---

[3] The United States argues that counsel did not perform deficiently, however, the Court need not address that issue as the lack of prejudice is clear and dispositive. See Strickland, 466 U.S. at 670.

become aggravated factors at sentencing, where there was overwhelming evidence of his guilt and that he acted with premeditation and deliberation such that there was virtually no chance for him to succeed at trial).

Accordingly, the Petitioner's claims of ineffective assistance of counsel are dismissed and denied.

### IV. CONCLUSION

For the foregoing reasons, the § 2255 Motion to Vacate is dismissed and denied.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: August 4, 2022

Kenneth D. Bell
United States District Judge

12